# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LINDSAY A. JOHNSON,

            Plaintiff,

v.

            Case No. 19-CV-1171-JPS

HEUER LAW OFFICES, S.C.,

            Defendant.

            **ORDER**

**1. BACKGROUND**

On August 14, 2019, Lindsay A. Johnson ("Johnson") brought this action against Heuer Law Offices, S.C. ("Heuer Law"), alleging that Heuer Law violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. (Docket #1). Now before the Court is Heuer Law's motion for summary judgment, (Docket #15). Upon review of the parties' submissions, the Court will grant Heuer Law's motion, for the reasons described in the balance of this Order.

**2. STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). "The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs 'that [the court] leave[s] those tasks to factfinders.'" *H–D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1010 (E.D. Wis. 2018) (quoting *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010)). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoeschst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

The Seventh Circuit has provided additional direction in evaluating the viability of FDCPA claims. Such claims are assessed from the perspective of the "unsophisticated consumer." An unsophisticated consumer "may be uninformed, naïve, [and] trusting, but is not a dimwit, has rudimentary knowledge about the financial world, and is capable of making basic logical deductions and inferences[.]" *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (citations and internal quotations omitted).

## 3. RELEVANT FACTS[1,2]

### 3.1. Heuer Law's State Court Action Against Johnson

Johnson is a married woman with three kids and works as a finance manager. It is undisputed that Johnson owed a debt to Aurora Medical Group ("Aurora") and that Aurora referred that debt to Heuer Law between May 20, 2019 and May 22, 2019. Aurora sent Heuer Law a file containing the following documents: (a) a referral cover page listing the relevant debtor, creditor, and balance information; (b) an account summary page which listed the legal name of the Aurora group, account numbers, dates of service, balance due, guarantor and patient names, and the patient's date of birth; (c) a breakdown of charges from another collection agency; and (d) six pages of itemized billing statements, which included a short description of the services provided.

Attorney John Heuer ("J. Heuer") first reviewed the file, verifying that Johnson was the party responsible for each invoice as either the patient or guarantor. He also checked the balance of the itemized amounts against the balance on the account summary page. He made changes to these

---

[1] The majority of facts are from Heuer Law's Response to Johnson's Proposed Findings of Fact (Docket #32) and Heuer Law's Reply to Johnson's Response to Heuer Law's Proposed Findings of Fact (Docket #33). To the extent any facts in this Order are from other documents in the record, the Court provides a citation thereto.

[2] Notably, Johnson fails to cite to evidence to support her responses in opposition to Heuer Law's proposed findings of fact. (*See, e.g.*, Docket #33 at 6–7). This failure violates both Federal Rule of Civil Procedure 56(c) and Civil Local Rule 56(b)(2)(B)(i). The Court will not consider responses that are not supported by reference to admissible evidence. *See Singer v. Frank*, No. 05-C-1040, 2007 WL 2220209, at *22 n.16 (E.D. Wis. July 31, 2007) ("In addition, proposed findings of fact that are not properly supported by reference to admissible evidence or consist of nothing more than legal conclusions will not be included. . . .").

documents as necessary, specifically by adding Johnson's middle initial, "A." Further, he confirmed that the correct corporate entity was listed, both by looking at the location where services were provided and by examining whether the services occurred at a hospital or at another provider. While reviewing Johnson's information, J. Heuer crossed out "Aurora Wilkinson Medical Clinic Summit" to reflect the correct corporate entity, "Aurora Medical Group."

Next, J. Heuer reviewed the location information on each billing statement. He stated that if he believed the location information on any of the itemized billing statements could have been confusing to the debtor, he would have added a "Special Itemized Statement Letter" stamp thereto. Because J. Heuer determined that the information in Johnson's file was not likely to be confusing, he did not add a stamp. He then confirmed that Johnson's debt and accounts were within the six-year statute of limitations, which meant that Heuer Law was able to proceed with collection activity.

On or about May 22, 2019, Attorney Kirsten Fagerland Pezewski ("Pezewski") interacted with Johnson's file. She knew that J. Heuer had already reviewed it because there were handwritten markings on it. During her review, Pezewski checked if the correct Aurora entity was listed. She also confirmed that the location information on the account statements or individually itemized statements would not likely be confusing to a debtor, thus, the statements did not warrant a special stamp.

Next, Attorney Johnathan Gourlay[3] ("Gourlay") reviewed Johnson's file. Gourlay knew that all of Johnson's information was verified by J. Heuer

---

[3]Johnson asserts that during Attorney Peterson's deposition, he stated that Heuer Law associates, such as Gourlay, are limited to reviewing a debtor's bankruptcy status and running a conflict check. Johnson argues that any

because of J. Heuer's notes and corrections to the referral documents. Gourlay then searched "Lindsay A. Johnson" and "Lindsay Johnson" on the Wisconsin Circuit Court Access website ("CCAP") to confirm that Johnson did not have an open Chapter 128 amortization of debt. Gourlay also used CCAP to review whether there were any pending cases against persons with the name "Lindsay A. Johnson" or "Lindsay Johnson" for anything that should be noted on the file, e.g., whether other law firms had filed suit against Johnson for her debt to Aurora. Ultimately, Gourlay did not find anything worth noting on CCAP. Next, he checked LexisNexis Public Records to search whether Johnson had filed bankruptcy in the past or whether she had a pending bankruptcy action. As a result of this bankruptcy check, Gourlay determined that Heuer Law would not be precluded from collecting from Johnson. He also used LexisNexis Public Records to confirm her name, date of birth, social security number, address, and that she was not deceased.

After an electronic file was opened, Gourlay reviewed the file in order to prepare a demand letter for Johnson. Heuer Law sends demand letters to inform the debtor (1) of the requirements set in 15 U.S.C. § 1962,

---

suggestion by Gourlay that he did more than that is untruthful and, thus, his declaration should be treated as a sham affidavit. (Docket #25 at 5 n.3). First, Peterson never expressly said associate attorneys were limited in their review, and Johnson's citation does not support her assertion. (*See* Docket #24-1 at 58–61). Second, Peterson averred that his testimony was based on Heuer Law's general procedures. (*Id.* at 106). Further, because Gourlay's declaration does not contradict, but rather "amplifies" Peterson's deposition testimony, it "is not a sham affidavit and is perfectly acceptable for purposes of summary judgment if it meets the usual requirements." *Lemons v. City of Milwaukee*, Case No. 13-C-0331, 2016 WL 3746571, at *1 (E.D. Wis. July 8, 2016). Thus, the Court disregards Johnson's opposition to Gourlay's declaration, as well as to Peterson's, J. Heuer's, and Pezewski's declarations, based on such grounds.

(2) that Heuer Law can handle payments, and (3) that Heuer Law may commence a lawsuit against the debtor. A member of Heuer Law's staff drafted the demand letter and then provided it to Gourlay. When reviewing demand letters, generally, Gourlay says it is his practice to review the file, correspond with other attorneys and staff members who may have reviewed it, ensure that there is not an attorney representing the debtor, and confirm that the debtor has not requested that Heuer Law cease communication with him or her. Gourlay exercises independent judgment as to whether a debt is collectible and whether a demand letter should be sent out, as well as to whom the letter should be sent. He also ensures that the client has authorized that Heuer Law send the demand letter.

Gourlay took the aforementioned steps with regard to Johnson. He also checked the demand letter by verifying her name and address against the information in the referral documents. Further, he reviewed the letter for typographical errors. He confirmed that Johnson had not communicated with Heuer Law nor made any payments since Aurora referred Johnson's file. Gourlay claims that if there had been any issues with the demand letter, he would not have signed it but rather marked it up for correction or, if necessary, followed-up with the client. Seeing that there were no issues with the letter, Gourlay signed it and a Heuer Law staff member sent it to Johnson on May 31, 2019.

Because Johnson did not respond to the demand letter, Heuer Law was authorized to commence a lawsuit against Johnson. Attorney Peterson, along with a Heuer Law staff member, prepared and filed a summons and complaint against Johnson. Peterson first interacted with Johnson's file on or about July 19, 2019. Notably, in his deposition, Peterson admitted that he did not have any recollection of working on Johnson's file before it became

a contested matter. (Docket #24-1 at 25). Regardless, Peterson was aware that at least three other attorneys had reviewed Johnson's file. Further, the opening of an electronic file for Johnson, as well as the fact that Heuer Law had sent the demand letter, indicated that Johnson's file had been checked. Peterson relied on the previous attorneys' respective reviews of Johnson's file when conducting his review of the same.[4]

### 3.2 Johnson's Alleged Injuries

When Johnson received the initial demand letter from Heuer Law, she had a newborn baby and was working full-time. Johnson was aware she had an outstanding debt to Aurora. Johnson testified that, upon seeing that the letter from Heuer was from a lawyer, she thought that there was nothing she could really do. Further, because the initial letter mentioned a "lawsuit," she "kind of panicked and wasn't sure what to do." (Docket #24-2 at 7). She claimed that her receipt of this letter caused her to not make payment on her debt to Aurora. (*Id.*) Johnson also averred that she tried to check out Heuer Law to make sure that it was legitimate. (*Id.* at 6).

Although Johnson's husband suggested that she contact a lawyer, she was hesitant because she did not want to incur legal fees. In turn, her hesitance caused her to debate with her husband. Ultimately, Johnson

---

[4]Johnson proffers disputed facts suggesting that the Heuer Law attorneys, particularly Peterson, are overworked and could not have been meaningfully involved in her file. (*See generally*, Docket #32). To be sure, "[f]ederal courts in Wisconsin have acknowledged that allegations of extreme attorney workload and minimal attorney oversight can state a claim for relief under § 1692(e)." *Bahena v. Jefferson Cap. Sys., LLC*, 363 F. Supp. 3d 914, 928 (W.D. Wis. 2019). However, because (1) the Court will grant Heuer Law's motion on the basis of standing, and (2) the Court finds, without holding, the undisputed facts regarding J. Heuer's, Pezewski's, and Gourlay's conduct are likely sufficient to show professional involvement as a matter of law, the Court does not delve into the disputed facts regarding Heuer Law's and Peterson's workload.

agreed to contact a lawyer after she was served with the summons and complaint. She claimed that she might not have hired a lawyer had she known Heuer Law's actual practices, but would have done some more investigating on her own. However, she acknowledged that she might still have hired an attorney *even if* she knew that Heuer Law allegedly did not review her file before filing her complaint. She claimed that this decision would have been based on what she found had she conducted her own investigation.

The aforementioned legal papers caused Johnson to worry about her garnishment and its potential effect on her job. Like the demand letter, the fact that the summons and complaint were from a lawyer made Johnson feel that "everything was accurate and that there was nothing that [she] could do." (Docket #24-2 at 10). Johnson testified that from the time she received the demand letter until she "learned about Heuer's actual practices" she suffered from the following: being sick to her stomach; arguing back and forth with her husband two to three times a week; being distracted and having to take breaks at work; and having difficulty falling asleep or not sleeping at all at least four to five times per week. She was also worried she could not afford a lawyer, as she was still paying a lawyer for work on a different case. (Docket #32 at 18–19). However, Johnson never sought medical treatment for any of these alleged emotional injuries or distress that she claims were the result of her receipt of the demand letter and the summons and complaint.

Johnson also averred that she experiences emotional distress whenever she has to talk about a lawsuit or bills, including when there is something going on with this action. (Docket #24-2 at 11). Further, Johnson stated that Aurora's being represented by a lawyer made the lawsuit

"different" than if she had received a letter from Aurora directly. (*Id.* at 4). This was because she does not have a lot of experience with legal matters, which made the lawsuit stressful. It is against this factual background that the Court discusses whether Johnson has standing to pursue this action.

## 4. ANALYSIS

Johnson brings her complaint pursuant to 15 U.S.C. § 1692e(3), which prohibits "[t]he false representation or implication that an individual is an attorney or that any communication is from an attorney." (*See* Docket #1 at 6). Further, even where a communication is actually from an attorney, to satisfy the FDCPA's requirements, the attorney must show that he or she "has become professionally involved in the debtor's file." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996). Johnson alleges that Heuer Law's attorneys were not professionally involved in her debt collection action and, therefore, she claims that she is entitled to an award of both statutory and actual damages. (Docket #1 at 6).

At this juncture, Heuer Law seeks summary judgment on the basis that there is no genuine dispute of material fact as to whether Heuer Law attorneys were professionally involved in its debt collection process against Johnson. Additionally, Heuer Law argues that the Court should dismiss this case because Johnson lacks standing to bring her claim. The Court expounds on the facts and law related to standing, as it must, because "a failure by [a] plaintiff to present evidence supporting a finding that she suffered a real injury traceable to [a] defendant's alleged lack of meaningful involvement may undermine her standing to sue and, therefore, [a] court's authority to consider the merits of her claim . . . ." *Diehm v. Messerli & Kramer, P.A.*, 426 F. Supp. 3d 578, 584 (W.D. Wis. 2019).

Page 9 of 18
Case 2:19-cv-01171-JPS   Filed 03/25/21   Page 9 of 18   Document 37

### 4.1 Standing

Article III of the Constitution authorizes the federal judiciary to decide "Cases" and "Controversies." U.S. Const. art. III, § 2. Therefore, "to invoke the jurisdiction of a federal court, a plaintiff must demonstrate that [she] has standing to sue, a 'requirement rooted in the traditional understanding of a case or controversy.'" *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) *as revised* (May 24, 2016)). The Court must ensure that standing exists at each stage of the litigation because it "is an essential ingredient of subject-matter jurisdiction." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (citation omitted). "Once the action reaches the summary-judgment stage, the plaintiff must demonstrate standing by setting forth[,] by affidavit[,] or other evidence of specific facts that, taken as true, support each element of standing." *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020) (citation, internal quotations, and original alterations omitted). To establish standing, the plaintiff must show that he or she has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 U.S. at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The parties dispute whether Johnson has established an injury in fact *and* whether her injury is fairly traceable to Heuer Law's alleged violation. The Court addresses the parties' arguments as to both of these elements in turn.

#### 4.1.1 Injury in Fact

An "injury in fact" is both (1) particularized, meaning that it affects the plaintiff in a personal and individual way, and (2) concrete, meaning that the injury actually exists. *Spokeo*, 136 S.Ct. at 1548. "[T]he fact that

Page 10 of 18
Case 2:19-cv-01171-JPS   Filed 03/25/21   Page 10 of 18   Document 37

Congress has authorized a plaintiff to sue a debt collector who 'fails to comply with any requirement of the [Fair Debt Collections Practices Act]'" does not mean that a plaintiff automatically has standing. *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (quoting 15 U.S.C. § 1692k(a)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S.Ct. at 1549. It does not matter whether a defendant's violation of the FCDPA is considered "procedural" or "substantive." *Larkin*, 982 F.3d at 1066. Regardless, the plaintiff must allege a concrete injury. *Id.*

According to Johnson, "[t]he harm is in the fact that the attorney misrepresents his involvement in the matter, 'upping the ante.'" (Docket #25 at 18). This is the very type of argument that the Seventh Circuit considered and rejected in *Casillas*. In *Casillas*, the plaintiff received a debt collection notice that failed to specify that she "had to communicate in writing to trigger the statutory protections."[5] 926 F.3d at 331. However, the plaintiff "did not allege that she tried—or even planned to try—to dispute the debt" or verify the creditor's identity. *Id.* at 332. Johnson cannot demonstrate standing by merely alleging misrepresentation without also

---

[5]The parties argue whether Johnson's situation is more like that of the plaintiff in *Casillas* or the plaintiffs in two other Seventh Circuit cases, *Robertson v. Allied Solutions*, 902 F.3d 690 (7th Cir. 2018), and *Lavallee v. Med-1 Solutions., LLC*, 932 F.3d 1049 (7th Cir. 2019), where the court found that the plaintiffs alleged a concrete harm sufficient to confer standing. Instead of evaluating the applicability of *Casillas*, *Robertson*, and *Lavallee* to Johnson's case, the Court refers to several recently issued Seventh Circuit decisions that directly address whether a plaintiff has alleged a concrete harm as the result of a defendant's FDCPA violation. *See, e.g.*, *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708 (7th Cir. 2021); *Pennell v. Glob. Tr. Mgmt., LLC*, No. 20-1524, 2021 WL 925494, at *1 (7th Cir. Mar. 11, 2021); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020).

showing "that the violation harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Id.* at 333 (quotation omitted).

The Seventh Circuit held that a plaintiff, who alleges that a defendant violated § 1692(e), must show that he or she took a "detrimental step" as a result of the defendant's actions. *See Smith*, 986 F.3d at 710 (discussing *Larkin*, 982 F.3d 1060 and *Gunn,* 982 F.3d 1069); *see also Brunett*, 982 F.3d at 1068 ("A debtor confused by a dunning letter may be injured if she acts, to her detriment on that confusion—if, for example, the confusion leads her to pay something she does not owe . . . . But the state of confusion itself is not an injury."); *Pennell*, 2021 WL 925494, at *3 (noting that plaintiff, who sued creditor under 15 U.S.C. § 1692c, did not establish injury in fact because she "failed to show that receiving [defendant's] dunning letter led her to change her course of action or put her in harm's way.").

This brings the Court to Johnson's assertion that Heuer Law's violation injured her because, as a result of Heuer Law's letter, she both (1) failed to make payments on the debt and (2) hired an attorney when she could have handled the matter herself. Notably, Johnson's own evidence refutes her claim that Heuer Law's alleged involvement caused her to not make payments. In her deposition, Johnson claimed that the word "lawsuit" in the demand letter "stopped her from making payment" because she "just kind of panicked." (Docket #24-2 at 7). Moreover, Johnson testified that she "intended" to make payments after she received the letter from Heuer Law. (*Id.*) Further, she stated that when she received the letter, she and her husband did not have any money set aside to make the payment. (*Id.* at 8). These statements suggest that Johnson *was* going to pay Heuer Law for her debt, notwithstanding the letter, but could not do so due

Page 12 of 18
Case 2:19-cv-01171-JPS   Filed 03/25/21   Page 12 of 18   Document 37

to her financial situation. She—not Heuer Law—refutes her own assertion that Heuer Law's correspondence precluded such efforts. Thus, *even if* Johnson's failure to make payments was an injury in fact traceable to Heuer Law's conduct, she has not met her burden at this stage to support her claim.

The Court also determines that Johnson was not harmed because she decided to hire an attorney, as opposed to investigating the claim herself. Johnson's hiring of an attorney was not detrimental to her interests, whatsoever. Johnson is similar to the plaintiff in *Brunett*, who claimed that she was confused as the result of the defendant's alleged violation of § 1692(e), and that confusion caused her to hire a lawyer. 982 F.3d at 1068–69. The Seventh Circuit stated that "[a] desire to obtain legal advice is not a reason for universal standing." *Id.* at 1069. Johnson does not show how hiring a lawyer was detrimental to her. In fact, she admits that she hired a lawyer in this action to represent her best interests. (Docket #24-2 at 12, 15). In the words of Judge Easterbrook, "where's the concrete harm?" *Brunett*, 982 F.3d at 1069.

### 4.1.2 Whether Johnson's Emotional Distress is Fairly Traceable to Heuer Law

Johnson avers that she suffered another injury in fact—namely, emotional distress—as the result of Heuer Law's alleged false representation that it was professionally involved in the collection of her debt. While Heuer Law does not contest that Johnson suffered emotional distress and the physical effects thereof (as she described during her deposition), Heuer Law does argue that such injuries are not fairly traceable to its conduct. (Docket #17 at 26–30).

This "fairly traceable" requirement ensures that there is a "causal connection between the injury and the conduct complained of . . . not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citation, internal quotations, and alterations omitted). In FDCPA cases, the alleged injury must be traceable to the alleged violation, as opposed to the filing of a valid lawsuit. *Diehm*, 426 F. Supp. 3d at 585. *See also Boerner v. LVNV Funding, LLC,* 358 F. Supp. 3d 767, 781 (2019) (noting that the plaintiff could not claim damages "just because he [was] being sued" but that "he must demonstrate that his damages stem" from the alleged misrepresentation).

To be sure, Johnson testified that she experienced a host of physical symptoms indicating that she was suffering from emotional distress. Yet, based on a review of Johnson's own deposition, the Court finds that she has only shown that her injury is traceable to the lawsuit, and not Heuer Law's alleged misrepresentation. For example, in her response brief, Johnson claims that her reactions "were caused by the fact that it was a lawyer who was suing her" but she does not cite to anything in the record to support this claim. (Docket #25 at 23). Unfortunately for Johnson, the citations she provides suggest that it was in fact the *lawsuit* that caused her to experience emotional distress. During her deposition, to opposing counsel's question about her injuries as a result of "this lawsuit," Johnson responded that she was "sick to her stomach," "went back and forth with her husband," "felt distracted a lot," and was losing sleep. (Docket #24-2 at 10, 11). Further, she does not suggest that her work-related anxiety was the result of Heuer Law's lack of meaningful involvement. (*See id.* at 15). To be fair, in Johnson's last proposed finding of fact, she claimed that Aurora's being represented by a lawyer made the lawsuit *different* for her than if she had received the

letter directly from Aurora. (Docket #32 at 19). However, she herself stated that her inexperience with legal matters made the lawsuit stressful.

Johnson cites to *Boerner* to support her proposition that a plaintiff's fear that a state lawsuit would result in garnishment of wages, which led to fear regarding his workplace reputation, had demonstrated emotional distress. (Docket #25 at 23). But in *Boerner*, in addition to a "meaningful involvement" claim, the plaintiff alleged that the creditor falsely represented the legal status of a debt in violation of § 1692(e)(2)(A). *Boerner*, 358 F. Supp. 3d at 773. The court found that the plaintiff had sufficiently explained the physical and mental effects of the lawsuit. *Id.* at 780–81. Further, the court found that, based on citations to the record, the plaintiff's heightened stress "appeared to be directly related to the acceleration of the debt and the initiation of the state court lawsuit without the opportunity to cure the default." *Id.* at 781. As it did in *Boerner*, the Court has reviewed the record in this case and does not find a direct relation between Heuer Law's alleged lack of involvement and Johnson's alleged distress. Based on the foregoing, as well as Section 4.1.1 *supra*, the Court finds that Johnson does not have sufficient standing to bring this action.

### 4.2    Johnson's 15 U.S.C. § 1692e Claim

Even if Johnson had standing, the Court would likely grant Heuer Law's motion for summary judgment. A debt collector violates § 1692e(3) when a communication purports to come from an attorney who was not involved, in any meaningful sense, in the process of creating and sending the communication. *See Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002); *Avila*, 84 F.3d at 229.

> If, however, the letter to the debtor is not the product of the attorney's professional judgment—if he has not

> independently determined that the debt is ripe for legal action by reviewing the debtor's file for example; if he has not exercised discretion in deciding whether and when the letter should be sent to a given debtor; if he does not see the individual letter before it is sent—then the letter is misleading.

*Nielsen*, 307 F.3d at 635 (citing *Avila*, 84 F.3d at 228–29). Thus, an attorney, acting as an attorney, must be the true "source" of the communication. *Avila*, 84 F.3d at 230. This is because an unsophisticated consumer, who receives communications from an attorney, "knows that the price of poker has just gone up," and such communications "may strike fear in the heart of that consumer." *Id.* at 229.

Johnson alleges that Heuer Law falsely represented or implied that an attorney was meaningfully involved in the debt collection process when it sent a demand letter and otherwise engaged in a debt collection action against her. (Docket #1 at 6). However, it is undisputed that, at a minimum, two Heuer Law attorneys meaningfully reviewed Johnson's file, and one of those attorneys, Gourlay, did so twice. The Court finds that, at several steps, both Gourlay and J. Heuer exercised discretion when determining whether anything would prevent Heuer Law's collection of Johnson's debt. Further, another attorney, Pezewski, interacted with the file on two occasions. Notably, Johnson does not argue that Peterson never interacted with her file. Further, she does not dispute that when Peterson received the file, it came with a summons and complaint, as well as other documents, after they had been prepared by a Heuer Law staff member. (*See* Docket #33 at 5). The Court finds that Peterson's reliance on the reviews and determinations of his associates and Heuer Law staff was reasonable when he sent the summons and complaint to Johnson. To the extent Johnson

argues that "there was no meaningful involvement in the debt collection process, as evidenced by Peterson's extreme caseload and actions,"(Docket #1 at 6), the Court notes that Johnson did not sue Peterson, but rather Heuer Law. Heuer Law attorneys directly reviewed Johnson's file, and further, supervised the actions of Heuer Law staff members with regard to the same. Johnson did not respond to the demand letter, triggering Heuer Law's lawsuit against her. Hence, it is unlikely that Johnson has shown a genuine dispute of material fact with regard to Heuer Law's professional involvement in her case.

**5.    CONCLUSION**

Based on the foregoing, the Court determines that Johnson does not have standing to bring this action. Even if she did, the Court finds that it is unlikely that there is a genuine dispute of material fact regarding Johnson's FDCPA claim. Thus, the Court will grant Heuer Law's motion for summary judgment, (Docket #15). At this juncture, the Court will also grant Heuer Law's motion to restrict access, (Docket #19), to Exhibit A to Ryan Peterson's declaration, (Docket #20-1).

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (Docket #15) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's motion to restrict access (Docket #19) be and the same is hereby **GRANTED**; Exhibit A to Ryan Peterson's declaration (Docket #20-1) be and the same is hereby **RESTRICTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Page 17 of 18
Case 2:19-cv-01171-JPS   Filed 03/25/21   Page 17 of 18   Document 37

Dated at Milwaukee, Wisconsin, this 25th day of March, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge